State ·v. Goodson

dence"; (3) The trial court erred "in concluding that the defendant's statements were freely, voluntarily and understandingly made without undue influence, compulsion or duress, and that said statements are admissible in evidence"; (4) The trial court erred "in allowing the State to introduce into evidence State's Exhibits Nos. 3 and 7, being adding machine and shotgun."

The principles of law raised by these assignments of error and the arguments advanced in support thereof are so well-settled that further elaboration thereon by us in this case would serve no useful purpose. The record before us of defendant's trial demonstrates that the able trial judge correctly followed and applied approved principles of criminal law and procedure in making the rulings challenged by these exceptions. In our opinion, the defendant had a fair trial free from prejudicial error.

No error.

Judges BRITT and MARTIN concur.

---

STATE OF NORTH CAROLINA v. WALTER ANDRE GOODSON

No. 7526SC152

(Filed 2 July 1975)

APPEAL by defendant from *Falls, Judge.* Judgments entered 23 October 1974 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 13 May 1975.

Defendant was charged in two bills of indictment with (1) the felony of armed robbery and (2) the felony of assault with a deadly weapon with intent to kill, inflicting serious injuries.

The State's evidence tended to show the following: On 27 May 1974, at approximately 5:45 p.m., defendant entered Broadway's Furniture Company on Rozzells Ferry Road in the City of Charlotte. The only persons in the store at that time were Mr. Broadway and his secretary, Mrs. Arnold. Defendant walked directly to the desk where Broadway was working. When defendant was about three feet from Broadway, he pulled a pistol from under his jacket and announced: "[T]his is a holdup,

State v. Goodson

give me your money." Defendant took Broadway's watch and wallet, and the money from the cash drawer. Defendant then walked about fifteen feet toward the front door, stopped, turned around, and shot Broadway in the forehead. Defendant proceeded another five feet toward the front door, stopped again, turned, and shot Broadway in the groin. Broadway's wallet contained his driver's license, a check payable to Broadway in the sum of $437.00, and a check payable to Broadway in the sum of $48.78. Broadway was hospitalized for several days for treatment of the gunshot wounds, and suffered total blindness of his right eye. About three to four hours after the robbery, defendant undertook to cash the $48.78 check at Midget Supermarket, but was refused. The day after the robbery the investigating officer found the $437.00 check, the $48.78 check, and Broadway's driver's license near the Southside Apartments. Each of the items had been torn up. Defendant was arrested at his sister's apartment in Southside Apartments.

Defendant denied the robbery and the shooting. He offered evidence which tended to account for his actions throughout the day of the robbery and shooting. His evidence tended to show that he was not in the vicinity of Broadway's Furniture Company or Midget Supermarket during the entire day in question.

*Attorney General Edmisten, by Associate Attorney George J. Oliver, for the State.*

*Edmund A. Liles, for the defendant.*

BROCK, Chief Judge.

We have examined all assignments of error properly brought forward. In our opinion they are wholly without merit. Defendant had a fair trial free from prejudicial error.

No error.

Judges MORRIS and HEDRICK concur.